Not for Publication

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>    v.<br><br>EUGENE SEABROOKES,<br><br>       Defendant. | Criminal Action No. 97-0485-ES-01<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

  Before the Court is defendant Eugene Seabrookes's motion for a resentencing pursuant to the First Step Act of 2018. (D.E. No. 199 ("Motion" or "Mot.")). Having reviewed the parties' submissions and for the following reasons, the motion is DENIED.

**I.  BACKGROUND**

  On July 2, 1998, Defendant was convicted after a jury trial of conspiracy to possess with intent to distribute more than 50 grams of cocaine base ("crack cocaine") in violation of 21 U.S.C. § 846, contrary to 21 U.S.C. §§ 841(a) and 841(b)(1)(A). (*See* D.E. No. 132, Final Judgment at 1). Defendant's total offense level was calculated at 46 under the 1997 Sentencing Guidelines after the Court applied enhancements for Defendant's role in the offense, possession of a firearm, and obstruction of justice. (*Id.* at 3; Presentence Investigation Report ("PSR") ¶¶ 42–51). His criminal history category was III. (Final Judgment at 3; PSR ¶ 65). The applicable statutory range was 10 years to life imprisonment, and his Guidelines range was life imprisonment. (PSR ¶¶ 116–

1

17). On October 15, 1998, Defendant was sentenced to life imprisonment with five years of supervised release. (Final Judgment at 3; *see* D.E. No. 149 ("Sentencing Tr.") at 78:23–79:1).

In 2011, Defendant moved *pro se* for a sentence reduction "pursuant to the Fair Sentencing Act." (D.E. No. 191 at 2). The Court denied the motion, informing Defendant that, because he was responsible for at least 25 kilograms of crack cocaine, his offense level "would remain the same under the Fair Sentencing Act and would not change the guideline range." (D.E. No. 192). On March 11, 2019, Defendant again moved *pro se* for a reduction of sentence "based on the new Fair Sentencing Act." (D.E. No. 197 at 1). After retaining counsel, Defendant moved anew on May 8, 2019, seeking a resentencing under § 404 of the First Step Act of 2018 ("First Step Act"). (*See generally* Mot.). The Government opposed, arguing, *inter alia*, that Defendant was ineligible for a sentence reduction under the First Step Act, and that, even if Defendant was eligible, neither the Fair Sentencing Act nor the First Step Act "empower[ed] this Court to engage in a plenary resentencing proceeding." (D.E. No. 205 ("Gov. Opp. Br.") at 18).

While the Motion was pending, the Third Circuit decided *United States v. Jackson*, 964 F.3d 197 (3d Cir. 2020), and *United States v. Easter*, 975 F.3d 318 (3d Cir. 2020). On December 11, 2020, the Court ordered the parties to address whether and how *Jackson* and *Easter* impact the disposition of the instant Motion. (D.E. No. 208). Thereafter, Defendant filed his supplemental brief (D.E. No. 209 ("Def. Supp. Br.")) and two certificates of achievement (D.E. No. 211-1), and the Government filed its supplemental brief (D.E. No. 210 ("Gov. Supp. Br.")).

## II.     STANDARD OF REVIEW

On August 3, 2010, Congress enacted the Fair Sentencing Act of 2010, which, *inter alia*, changed the penalty structure for crack cocaine offenses. Pub. L. 111-220, 124 Stat. 2372 ("Fair Sentencing Act"); *see also* 21 U.S.C. § 841(b); *Dorsey v. United States*, 567 U.S. 260, 269 (2012).

Relevant to this case, the Fair Sentencing Act increased the amount of crack cocaine needed to trigger the ten-year minimum sentence from 50 grams to 280 grams. Fair Sentencing Act § 2 ("Section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) is amended . . . in subparagraph (A)(iii), by striking '50 grams' and inserting '280 grams'[.]"); *see* 21 U.S.C. § 841(b)(1)(A)(iii); *Dorsey*, 567 U.S. at 269. The Fair Sentencing Act did not apply to Defendant at the time it was enacted because it did not apply retroactively to offenses committed before August 3, 2010.

However, the First Step Act, enacted on December 21, 2018, makes certain provisions of the Fair Sentencing Act retroactive and allows district courts to reduce a sentence imposed prior to August 3, 2010. Pub. L. 115-391, 132 Stat. 5194 ("First Step Act") § 404(a). Whether a defendant is eligible for a reduction of sentence under § 404(a) depends on whether the defendant's statute of conviction was modified by section 2 or 3 of the Fair Sentencing Act. *Jackson*, 964 F.3d at 202. But the Court is not required to reduce a sentence even if the petitioner is deemed eligible. First Step Act of 2018 § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section"); *Jackson*, 964 F.3d at 204 ("While a defendant may be eligible for a reduction of sentence, district courts are under no obligation to provide relief."). Rather, relief under § 404 is discretionary. First Step Act § 404(c); *Jackson*, 964 F.3d at 204–05.

### III.   DISCUSSION

#### A.   Eligibility

Subsequent to the Third Circuit's decision in *Jackson*, the parties no long dispute that Defendant is eligible for a sentence reduction under the First Step Act. (*See generally* Def. Supp. Br. at 1–2; Gov. Supp. Br. at 1–2). The Court agrees.

3

It is undisputed that Defendant committed the offense before August 3, 2010, and that he was convicted under 21 U.S.C § 846 via 21 U.S.C. §§ 841(a) and 841(b)(1)(A)(iii). (Mot. at 1; Opp. Br. at 8). The Fair Sentencing Act specifically modified the penalties associated with these statutes. *See* Fair Sentencing Act § 2 (amending 21 U.S.C. §§ 841(b)(1)(A)(iii) and (b)(1)(B)(iii)); *Jackson*, 964 F.3d at 200 n.3 ("section two [of the Fair Sentencing Act] increased the quantity threshold in § 841(b)(1)(A)(iii) from fifty to 280 grams of crack"). Because Defendant committed a "covered offense," he is eligible for resentencing under the First Step Act. *See Jackson*, 964 F.3d at 206 (holding that "§ 404 eligibility turns on a defendant's statute of conviction, not on his possession of a certain quantity of drugs").

### B. Discretionary Relief and Section 3553(a) Factors

Section 404 requires that the sentencing court "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act § 404(b) (internal citations omitted). In other words, courts must conduct the sentencing "as if all the conditions for the original sentencing were again in place with the one exception: (i.e. the changes to sections 2 and 3 of the Fair Sentencing Act)." *Easter*, 975 F. 3d at 326 (quoting *United States v. Hegwood*, 934 F.3d 414, 418–19 (5th Cir. 2019)). This means that courts must consider all of the § 3553(a) factors, as well as post-sentencing developments, to the extent that they are applicable. *Id.* at 326–27. "This new assessment must include any new, relevant facts that did not exist, or could not reasonably have been known by the parties, at the time of the first sentencing (e.g., a defendant's post-sentencing rehabilitation or new health problems)." *United States v. Murphy*, 998 F.3d 549, 555 (3d Cir. 2021), *as amended* (Aug. 4, 2021). But courts cannot "reconsider the facts as they stood at the initial sentencing," such as the defendant's drug-quantity findings. *Id.* To this end, courts must give all arguments on the

§ 3553(a) factors "meaningful consideration" and address them by "providing more than a rote recitation of the § 3553(a) factors." *Easter*, 975 F.3d at 327 (internal quotation marks omitted). Finally, a defendant "is not entitled to plenary resentencing hearing at which he would be present." *Id.* at 326.

Defendant asks the Court to reduce his current life sentence to an unspecified term of years. (Def. Supp. Br. at 4, 6 & 8). In support, Defendant argues that: (i) while he recognizes the seriousness of his crime, a life sentence is beyond "a just sentence for conspiracy to distribute drugs"; (ii) long sentences provide diminishing returns on what criminal punishment sets out to achieve; (iii) Defendant's likelihood of recidivism has significantly diminished since his imprisonment approximately 25 years ago and will continue to diminish because Defendant, who is now nearly 50 years old, will not be eligible for parole on his state convictions until November 6, 2057; and (iv) for these same reasons, a reduction in Defendant's sentence will not implicate public safety concerns. (*Id.* at 7–8). In addition, Defendant informed the Court that he has been working as a barber in the prison since 2004 and has completed the Barbering Program in August 2009. (D.E. No. 211 at 1; D.E. No. 211-1 at 1). In September 2016, Defendant also completed the Family Reunification and Transition program. (D.E. No. 211 at 1; D.E. No. 211-1 at 2).

Initially, it is undisputed that, after the enactment of the Fair Sentencing Act and the First Step Act, Defendant is still subject to the same statutory maximum sentence of life imprisonment and the same Guidelines range, the latter of which is no longer mandatory pursuant to *States v. Booker*, 543 U.S. 20 (2005).[1] (*See* Def. Supp. Br. at 4–5; Gov. Supp. Br. at 2–5). Section 404(b)

---

[1] Defendant argues, for the sole purpose of preserving it for review by the Third Circuit and United States Supreme Court, that his statutory maximum sentence is 40 years, instead of a life sentence, because he would not be subject to the enhanced penalty provision if the First Step Act were in place when he was sentenced. (Def. Supp. Br. at 3–4). According to Defendant, because § 401 of the First Step Act changed the definition of a "serious drug felony," under which his prior convictions no longer fall, the maximum penalty enhancement from 40 years to life sentence under 21 U.S.C. § 841(b)(1)(B) is no longer applicable to him. (*Id.*). In so arguing, Defendant fully recognizes that the Court is bound by *United States v. Hodge*, 948 F.3d 160 (3d. Cir 2020), where the Third Circuit held that § 403 of

5

of the First Step Act specifically requires courts to impose a reduced sentence as if the Fair Sentencing Act was "in effect at the time the covered offense was committed." Thus, the Fair Sentencing Act's impact on a defendant's sentencing exposure matters significantly to a court's decision to reduce the original sentence. In all the cases Defendant rely on, the courts' decisions to reduce the defendants' sentences were substantially based on the finding that the defendants' statutory maximum sentences and the Guidelines ranges would be lower at resentencings than when they were original sentenced. *United States v. Najar*, No. 95-CR-0538, 2020 WL 6781809, at *4–5 (D.N.M. Nov. 18, 2020) (reducing the defendant's sentence from 360 months, which he accepted as part of his Rule 11 plea agreement, based partly on the finding that the defendant would reasonably have sought an agreement with a shorter overall term of imprisonment if his sentence exposure was what he would have faced at resentencing); *United States v. Redrick*, No. 99-0437, 2020 WL 6799253, at *4 (E.D. Pa. Nov. 19, 2020) (finding it important that the defendant, who "was sentenced to the statutory mandatory minimum of life imprisonment," would have "faced a statutory range of 10 years to life for his drug charges and a mandatory five year consecutive sentence for his firearm charges"); *United States v. Warren*, No. 95-0147, 2020 WL 3036011 at *2–3 (W.D. Va. June 5, 2020) (considering that the defendant, who was sentenced under a mandatory life sentence, would be subject to, at the most, a statutory maximum sentence

---

the First Step Act does not apply retroactively to sentences imposed before the enaction of the First Step Act because § 403(b) limits its applicability. (*Id.* at 4). The same language in § 403(b) relating to § 403's applicability is included in § 401(c), indicating that § 401 similarly does not apply retroactively. First Step Act §§ 401(c) & 403(b) ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act*, if a sentence for the offense has not been imposed as of such date of enactment*.") (emphasis added); *see Hodge*, 948 F.3d at 163 (finding that § 403 of the First Step Act does not apply retroactively based on clear Congressional intent that the new mandatory minimum would apply "to any offense that was committed before the date of enactment of this Act*, if a sentence for the offense has not been imposed as of [that] date*") (emphasis added). Nonetheless, Defendant raises this argument to preserve it for further review. (*Id.* at 4). Accordingly, the Court finds, and the parties do not actually dispute, that Defendant remains subject to a statutory maximum sentence of life imprisonment. (*See* Def. Supp. Br. at 4–5 ("Mr. Seabrookes remains subject to a statutory maximum sentence of life imprisonment."); Gov. Supp. Br. at 2–5).

of forty years); *United States v. Mothersill*, 421 F. Supp. 3d 1313, 1319–20 (N.D. Fla. 2019) ("If, however, the 2010 Fair Sentencing Act had been in effect at the time, such that the crack offenses charged in this case were subject to the statutory maximum sentence of forty years under § 841(b)(1)(B)(iii) instead of the statutory maximum of life under § 841(b)(1)(A)(iii), then—more likely than not—I would have granted Mothersill's request for a departure from the guideline range of life on the RICO counts."). Here, unlike in these cases, even if the Fair Sentencing Act were in place at the time of Defendant's sentenced, his statutory maximum and Guidelines range would be the same. This fact lends no support to a reduction in Defendant's sentence.

The Court further finds that the relevant § 3553(a) factors do not warrant a reduction of Defendant's life sentence. The Court is not persuaded that Defendant's likelihood of recidivism or risk of endangering the public sufficiently diminishes merely because Defendant has been imprisoned for twenty-five years and he has passed the age when statistics show a steep decline in criminal behavior. (*See* Def. Supp. Br. at 7). The record is thin with respect to Defendant's behavior while incarcerated. Although Defendant submitted two certificates of achievement, nothing else in the record demonstrates any positive conduct over the course of Defendant's 25-year incarceration. In fact, there is evidence in the record suggesting the opposite. As discussed below, Defendant continued to violate the law after he was imprisoned by, for example, calling his co-conspirators from the prison and instructing them to cook and sell more crack cocaine. (PSR ¶¶ 13 & 23–25). Notwithstanding, the Court does not disagree that, by the time Defendant will be eligible for parole on his state convictions on or around November 6, 2057, his likelihood of recidivism and the risk he will impose on the public will be low, and, for this reason, further imprisonment (at that point) would do little to specifically deter him from committing additional crimes. However, these considerations are insufficient to negate the effect of the other § 3553(a)

7

factors the Court must consider—namely, the seriousness of Defendant's crimes, the characteristics of Defendant, and the need to promote respect of the law and to deter others from committing similar crimes.

The seriousness of Defendant's crime strongly disfavors a reduction in his sentence. Defendant did not just commit any "conspiracy to distribute drug" (Def. Supp. Br. at 6); he was the leader of a drug distribution operation that trafficked at least 25 kilograms of crack cocaine. (Sentencing Tr. at 33:9–12). During at least half of 1995 and most of 1996, Defendant distributed approximately one kilogram of crack cocaine weekly. (PSR ¶ 13). Given the magnitude of Defendant's drug distribution operation, as the sentencing court pointed out, "the victims that were directly affected by the crack cocaine [D]efendant distributed . . . number in the thousands, if not the tens of thousands." (Sentencing Tr. at 78:1–4). Despite Defendant's suggestion that the Sentencing Guidelines in place in 1998 were overly harsh and that "[m]uch has changed in the last two decades," (Def. Supp. Br. at 6), the amount of drugs involved in this case has been consistently subject to the most severe punishment and does not support a reduced sentence under § 3553(a). *See Jackson*, 964 F. 3d at 204 (stating that the actual quantity of drugs a defendant possessed is essential to courts' exercise of discretion in considering the § 3553(a) factors).

Moreover, the record clearly shows that Defendant was extremely violent and was capable of committing the most serious crimes. In furtherance of his drug operation, Defendant was typically armed and had on many occasions resorted to violence, including shooting people who got in his way. (*See* PSR ¶¶ 21–22). Indeed, at the time of the original sentencing, Defendant was charged with, *inter alia*, the murders of Anthony Lewis, Shawn Taylor, and Brian Adonis in state court. (PSR ¶ 85). Defendant was subsequently convicted for the murders of Anthony Lewis and Shawn Taylor, for which he is serving two life sentences in state prison. (Gov. Supp. Br. at 6;

8

Gov. Opp. Br. at 2); *see Murphy*, 998 F.3d at 559 ("Section 404(b) authorizes district courts to take into account, at the time of resentencing, any changed circumstances made relevant by § 3553(a).").

In addition, Defendant's extensive criminal history speaks volumes of his disrespect of the law. For example, at the time the instant offense was committed, Defendant was on probation. (PSR ¶ 65). Even after his arrest on the murder charges, Defendant instructed his co-conspirators to cook more crack cocaine and to continue with the drug distribution operation in order to, *inter alia*, raise bail money for his murder charges. (*Id.* ¶¶ 13 & 23–25). While imprisoned, Defendant also made phone calls to his co-conspirators and instructed them to destroy evidence that would incriminate him. (PSR ¶¶ 23–25). He went so far as to ask the mother of his children to fabricate evidence and give false trial testimony. (*Id.* ¶ 40). The need to promote respect of law is dire. In the same vein, a clear message must be sent to society that a criminal with Defendant's characteristics who committed crimes of the nature that is at issue in this case will face the most severe sentence. The Court shares the sentencing judge's sentiment that: "[t]his defendant will be in jail for the rest of his life. It is my fervent wish that the young men and women in our communities will pay some attention to this sentence." (Sentencing Tr. at 78:18–21).

Finally, the Court has considered Defendant's post-sentencing efforts at rehabilitation. Those efforts include working as a barber since 2004 and obtaining two certificates of achievements in 2009 and 2016, respectively. (D.E. Nos. 211 & 211-1). However, those efforts do not materially change the Court's § 3553(a) analysis.

In short, based on the relevant § 3553(a) factors, the Court finds that a life sentence is an appropriate sentence for Defendant, and that he is not entitled a reduced sentence under the Fair Sentencing Act and the First Step Act.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for a sentence reduction under § 404 of the First Step Act of 2018 is DENIED. An appropriate Order accompanies this Opinion.

Date: November 15, 2021

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
